UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Bank Rhode Island<br>Appellant-Creditor,<br><br>v.<br><br>Pawtuxet Valley Prescription<br>& Surgical Center, Inc.,<br>Appellee-Debtor. | C.A. No. 07-0390-S<br>C.A. No. 08-0014-S |

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

I. Background

These matters come before the Court on the appeal of Bank Rhode Island (the "Bank") from two orders entered by the Bankruptcy Court in Chapter 11 proceeding No. 07-11767.

The first order, entered originally on October 5, 2007, granted the motion of Pawtuxtet Valley Prescription & Surgical Center, Inc. ("Debtor") to use the Bank's cash collateral for an initial period of sixty days.[1] The order also required Debtor to

---

[1] Although the order was subsequently renewed, it has been suggested that the issues on appeal may be moot because circumstances have changed with the passage of time. The Court is cognizant of its obligation to avoid "wander[ing] into the 'realm of the advisory and the hypothetical.'" Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (quoting Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 615 (1st Cir. 1993)). However, the issues raised in this appeal fall within that narrow exception for claims that are "capable of repetition yet evading review." Horizon Bank, 391 F.3d at 54. The exception applies when the underlying facts "are inherently temporary such that they will predictably have changed and foreclosed meaningful relief by the

supply the Bank with financial information at the close of each business day showing: (1) its gross sales for the day in all divisions; (2) its total cash receipts for all divisions; and (3) its total expenditures for all divisions. The Bank's appeal centers on two issues: First, whether the Bankruptcy Court erred in according Debtor's real property a fair market value, rather than a liquidation value, for purposes of determining whether the Bank was adequately protected; Second, whether the Bankruptcy Court erred in determining that the Bank is adequately protected by a sufficient equity cushion.

The second order entered by the Bankruptcy Court, on November 29, 2007, granted Debtor's motion to obtain post-petition credit on a secured basis.[2] The order allowed Debtor to use cash collateral to purchase a supply of the drug Synagis from Debtor's wholesaler, and provided that the wholesaler would be granted a first position security interest in all Synagis shipped on credit and the receivables produced through its sale. The Bank was granted a

---

time the case has worked its way through the legal system." Id. (citations omitted). Here, the underlying facts are inherently temporary because Debtor remains in operation, and its financial position changes on a daily basis. The specific facts that induced the Bankruptcy Court's order are surely no longer extant, but the issues (i.e. adequate protection, equity cushion) will be relevant so long as Debtor wishes to use the Bank's cash collateral. Therefore, it is appropriate for the Court to consider the Bank's appeal.

[2] It appears that the November 29 order essentially confirmed an interim consent order that had been entered on October 29, and renewed on November 7.

second position security interest in the same. Debtor was authorized to use the cash produced by the sales of Synagis to pay its operating expenses.

II. Standard of Review

A federal district court has appellate jurisdiction over the final judgment of a United States Bankruptcy Court sitting within its jurisdiction. 28 U.S.C. § 158. This Court reviews de novo the decision of the Bankruptcy Court with respect to rulings of law, but uses a clearly erroneous standard with respect to findings of fact. In re DN Assoc., 3 F.3d 512, 515 (1st Cir. 1993).

Where, as here, the application of the law to particular facts poses a mixed question of law and fact, the Bankruptcy Court's ruling is "subject to the clearly erroneous standard, unless the bankruptcy court's analysis was 'infected by legal error.'" In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995) (quoting William v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993)). Finally, the Court gives considerable deference to the factual determinations and discretionary judgments of the bankruptcy judge. In re DN Assoc., 3 F.3d at 515.

III. Discussion

A. Standard of Valuation

The thrust of the Bank's argument is that fair market value is an inappropriate valuation method to utilize in the adequate protection analysis because "the Bankruptcy Court should have

valued the collateral assets in the light most favorable to the Bank, analyzing the effects of the Debtor's proposed post-petition operations on the Bank's collateral under a worst case scenario." In the worst case scenario, goes the argument, if Debtor fails to reorganize and is forced into liquidation, "the only realistic way by which the Bank will collect on its security interest in the Property is through foreclosure proceedings and sale of the Property at public auction in accordance with state law." The Bank argues that the Bankruptcy Court misapplied Winthrop, in that while Winthrop remains good law, it is inapplicable to the circumstances existing in this case.

The Court is not persuaded that the Bankruptcy Court erred in its application of Winthrop. Winthrop, as the Bankruptcy Court, the Bank, and Debtor all note, does not directly address adequate protection, and is in fact focused on the valuation of collateral to calculate the value of a secured claim under Section 506(a). However, the First Circuit noted a relation between valuation for the two purposes: "a valuation for § 361 [i.e. adequate protection] purposes necessarily looks to § 506(a) for a determination of the amount of a secured claim." Winthrop, 50 F.3d at 74; see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 371-72 (1988) (stating that statutory construction is a "holistic endeavor" and defining value of "entity's interest in property" entitled to adequate protection under §§ 361 and 362 in

light of meaning of value of "creditor's interest" in property under § 506(a)).

If Winthrop applies to the present case, and this Court believes it does, then it was appropriate for the Bankruptcy Court to apply a fair market value standard of valuation. In Winthrop, the First Circuit approved the holdings of other courts, including four circuit courts, that "declined to value collateral that a debtor proposes to retain based on a hypothetical foreclosure sale." Winthrop, 50 F.3d at 74. "These courts reason that because the reorganizing debtor proposes to retain and use the collateral, it should *not* be valued as if it were being liquidated; rather, courts should value the collateral 'in light of' the debtor's proposal to retain it and ascribe to it its going-concern or fair market value with no deduction for hypothetical costs of sale." Id. In so holding, the First Circuit disapproved of several cases which the Bank relies on in advocating for the use of a liquidation valuation.[3] Id. at 75.

[3] The cases are: In re Demakes Enters., Inc., 145 B.R. 362, 365 (Bankr. D. Mass. 1992) (valuing meat processing plant at liquidation value); In re Ledgemere Land Corp., 125 B.R. 58, 61 (Bankr. D. Mass. 1991) (bank's mortgage on Chapter 11 debtor's real property that debtor intended to retain and eventually develop "is worth only what [property] will bring at foreclosure"); In re Robbins, 119 B.R. 1, 5 (Bankr. D. Mass. 1990) (valuing Chapter 11 debtor's investment property at foreclosure value); In re T.H.B. Corp., 85 B.R. 192, 196 (Bankr. D. Mass. 1988) ("The fact that the Debtor is a going concern is no reason to value the collateral under the going concern standard unless it appears likely that the secured party will actually receive that value from its collateral through a pending sale."). Although the Bank asserts that

Moreover, the Court is not persuaded by the Bank's suggestion that the absence of a formal reorganization plan militates for the application of a liquidation value standard. The bankruptcy process contemplates that, in typical circumstances, a debtor may operate for several months before even filing its first reorganization plan. See, e.g., 11 U.S.C. § 1121(b) ("Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter."). Making the application of a fair market valuation standard dependent upon the filing of a reorganization plan would essentially mandate the filing of a specious plan as soon as the chapter 11 petition is filed.

Therefore, the Court does not believe that the Bankruptcy Court's decision to use a fair market valuation standard was clearly erroneous, necessitating reversal.

B. Equity Cushion

Although the Court finds that the Bankruptcy Court applied an appropriate standard of valuation to Debtor's real property, the Court does not believe that the resulting "equity cushion" found by the Bankruptcy Court is sufficient to provide adequate protection to the Bank. The Bankruptcy Court found that the value of the

---

Winthrop's disapproval of these cases is distinguishable because Winthrop involves Section 506(a) rather than Section 361, the Court notes that the cases disapproved also involve Section 506(a). They would, therefore, appear to be either as relevant or as irrelevant as Winthrop is to this case.

Bank's collateral totals $2,578,700.[4] As of the date of the bankruptcy petition, Debtor was indebted to the Bank in the approximate amount of $2,475,000, although that amount apparently had grown to $2,500,000 at the time of the Bankruptcy Court's decision to allow the use of cash collateral. The maximum difference of $103,700 amounts to an equity cushion of approximately 4%.

Although it has been held that an equity cushion, standing alone, can provide adequate protection, Baybank-Middlesex v. Ralar Distrib., Inc., 69 F.3d 1200, 1203 (1st Cir. 1995), it seems that a 4% cushion typically is not taken to constitute adequate protection. See Kost v. First Interstate Bank of Greybull, 102 B.R. 829, 831-32 (D. Wyo. 1989) (collecting cases; equity cushion of 20% or more generally held adequate while cushion of less than 11% generally held insufficient). This inquiry is obviously highly variable from case to case, In re McKillips, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (citation omitted), but the Court is unable to identify any line of authority holding less than a 10% equity cushion to be sufficient as a general matter. See, e.g., In re Jug End in the Berkshires, Inc., 46 B.R. 892, 899-900 (Bankr. D. Mass. 1985) (8.3% insufficient); In re LeMay, 18 B.R. 659, 660-61

---

[4] According to the Bank, the Bankruptcy Court incorrectly included the value of Debtor's motor vehicles, or $75,000, in the collateral asset calculation. The Court will not dwell on this issue, since it does not affect the outcome of this decision.

(Bankr. D. Mass. 1982) (7% is inadequate); see also In re Rogers Dev. Corp., 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (15% to 20% equity cushion held to be sufficient to provide adequate protection to a creditor even though the debtors had no equity in the property); In re Schaller, 27 B.R. 959, 961-62 (W.D. Wis. 1983) (17% to 18% cushion held not to offer adequate protection where cushion was being rapidly eroded by the daily accrual of interest on the debt); In re McGowan, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion sufficient as adequate protection where monthly payments were proposed to cover interest accruing on the claim); In re Pitts, 2 B.R. 476, 478 (Bankr. C.D. Cal. 1979) (holding a 15% cushion to be "minimal").

The Court understands that the Bankruptcy Court declined to consider certain collateral, such as Debtor's accounts receivable, because it believed that Debtor's real property, inventory, and equipment was of a sufficient value to adequately protect the Bank's interest. Thus, if all of the Bank's collateral is taken into account, the equity cushion may be far larger and may yet prove to provide adequate protection.

Therefore, the Court believes the best course of action at this juncture is for the Bankruptcy Court to conduct a complete and thorough calculation of the Bank's collateral to determine whether its interest is adequately protected. The Bank's appeal is therefore denied insofar as it challenges the Bankruptcy Court's

method of valuation. The case is remanded to the Bankruptcy Court for further proceedings not inconsistent with this decision and order, including evaluation of the equity cushion.

IT IS SO ORDERED.

WESmith

William E. Smith
United States District Judge
Date: 4/11/08